Brett D. Cragun (#8683)
CRAGUN & CRAGUN
PO Box 160234
Clearfield, UT 84016
T: (801) 513-2060
F: (801) 513-2082
E: Brett@BrettCragun.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALYSSA HARRIS,<br><br>       Plaintiff,<br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC;<br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br>TRANS UNION LLC; AND N.A.R. INC.,<br><br>       Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff, Alyssa Harris ("Ms. Harris" or "Plaintiff"), by and through the undersigned counsel, hereby brings this action against defendants Equifax Information Services LLC ("Equifax); Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union"); and N.A.R., Inc. d/b/a North American Recovery ("NAR"), (collectively "Defendants"); alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendants regularly transact business within the District. Defendants regularly direct business at the District. Defendants voluntarily and purposefully avails themselves of the protections of the District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff is a natural person who resides in Logan, Utah. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Equifax is a Georgia company that regularly conducts business in this District. Equifax maintains a principal place of business at 1550 Peachtree Street, NW, H46, Atlanta, Georgia 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

6. Defendant Equifax qualifies as a "consumer reporting agency" ("CRA") under the FCRA as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

7. Defendant Experian is an Ohio company that regularly conducts business in this District. Experian maintains a principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served directly at its principal place of business.

8.     Defendant Experian qualifies as a "consumer reporting agency" ("CRA") under the FCRA as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

9.     Defendant Trans Union is an Illinois company that regularly conducts business in this District. Trans Union maintains a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

10.    Defendant Trans Union qualifies as a "consumer reporting agency" ("CRA") under the FCRA as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. 15 U.S.C. § 1681a(f).

11.    Defendant NAR is a Utah company that regularly conducts business in this District. NAR maintains a principal place of business at 1600 West 2200 Ste. #410, West Valley City, Utah 84119. NAR can be served through its registered agent, David Saxton, located at the aforementioned address.

12.    Defendant NAR is a financial institution that serves as a collection agency. NAR regularly furnishers consumer credit information to credit reporting agencies. Therefore, NAR is a "furnisher" of consumer credit information as that term is contemplated by 15 U.S.C. §1681s-2.

13. At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

14. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer credit and background reports. Thus, Congress enshrined the principles of "fair and accurate reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681a.

15. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (commonly referred to as "credit bureaus" or "background check companies"): (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies or suppress the inaccurate or misleading information.

16. The FCRA provides consumers with a private right of action against consumer reporting agencies that fail to comply with their statutory obligations.

17. In or around November 2018, Plaintiff moved into a rental home with a few roommates.

18. Their rental home was managed Reeder by Property Management.

19. Shortly after moving into the rental home, Plaintiff started dating one of her roommates.

20. Unfortunately, Plaintiff's then-roommate and boyfriend became physically and verbally abusive.

21. On or about April 19, 2019, the couple got into an altercation that caused Plaintiff to sustain a number of physical injuries.

22. Fearing for her life, Plaintiff called the police. Plaintiff's then-boyfriend and roommate was subsequently arrested.

23. In the months that followed, Plaintiff came to terms with the fact that her relationship was unsafe, and she could not continue to live in the home.

24. Plaintiff knew that her then-boyfriend would be leaving town in or around September 2019.

25. Plaintiff thought this would be the perfect opportunity for her to safely move out of the apartment.

26. Plaintiff communicated with her other roommates who agreed to release her form the lease so long as she found a replacement.

27. On or about September 23, 2019, Plaintiff completed the paperwork and paid the $200.00 fee to be removed from the lease.

28. Immediately thereafter, Plaintiff moved out of the rental home.

29. At the time, she understood that she was not liable for the rent or any other monetary obligation resulting from the lease.

30. In or around November 2020, Plaintiff received a letter from NAR trying to collect a debt associated with the lease.

31. Plaintiff was confused, as she had been officially removed from the lease and released from any financial obligation associated with the rental home on September 23, 2019.

32. On November 24, 2020, Plaintiff emailed NAR to dispute the alleged debt.

33. In her dispute, Plaintiff included a copy of her lease removal agreement and proof that she had paid the $200 fee.

34. On December 23, 2020, NAR emailed Plaintiff. The email included Plaintiff's full name, the original creditor (Reeder Asset Management), the account number, and the account balance.

35. The email from NAR explicitly stated:

> This letter will serve as notification that you have been removed as a responsible party from the below listed account. This letter will also serve as notice that this account has been, or will be, deleted from your credit file with any and all credit bureaus that it may have been reported to.

36. Thereafter, Plaintiff assumed that the issue was resolved, and she was not going to be held responsible for the debt allegedly owed to NAR.

37. On or about February 26, 2022, Plaintiff went to Rich's Cars N Credit, Inc. ("Rich's) to purchase a vehicle.

38. As part of the transaction, Rich's pulled Plaintiff's consumer reports.

39. Thereafter, Rich's informed Plaintiff that there was an NAR collections account ("the Account") on her credit reports that was causing her potential interest rate to increase.

40. The Rich's representative indicated that with the Account, Plaintiff qualified for an interest rate nearing 9%. But without the Account, she would have qualified for an interest rate below 5%.

41. Plaintiff was frustrated and confused by the Account, as she assumed that the issue had been resolved more than a year earlier.

42. However, Plaintiff needed a new vehicle, so she reluctantly accepted the auto loan with the higher interest rate despite knowing that she was not responsible for the alleged debt that was hurting her approval odds.

43. On or about March 15, 2022, Plaintiff pulled her Equifax, Trans Union, and Experian ("the CRA Defendants") consumer reports to investigate the Account.

44. Plaintiff was frustrated to see that her Equifax, Experian, and Trans Union credit reports listed a North American Recovery collections account (original creditor: Reeder Management) with an outstanding balance of $3,007.

45. On or about March 29, 2022, Plaintiff sent dispute letters to the CRA Defendants via certified mail.

46. In her dispute letters, Plaintiff provided her full name, date of birth, social security number, and address.

47. Plaintiff's disputes explained that she had been removed from the lease with Reeder Management and that she was not responsible for the Account.

48. With her disputes, Plaintiff also enclosed a copy of her valid photo ID, a recent utility bill, and the email that she received from NAR on December 23, 2020.

49. Upon information and belief, each of the CRA Defendants received Plaintiff's dispute letters.

50. Upon information and belief, each of the CRA Defendants forwarded Plaintiff's disputes (and accompanying documents) to the furnisher of the inaccurate Account information, NAR.

51. Upon information and belief, NAR received notice of Plaintiff's disputes from each of the three CRA Defendants.

52. Upon information and belief, NAR failed to reasonably investigate the Account upon receipt of Plaintiff's disputes.

53. Upon information and belief, NAR failed to review its own internal files while investigating Plaintiff's disputes.

54. Upon information and belief, NAR failed to review the documents Plaintiff enclosed in her disputes, including an email from *its own employee* stating that Plaintiff was not responsible for the Account.

55. Upon information and belief, NAR responded to the CRA Defendants, and verified the disputed information as "accurate."

56. Upon information and belief, NAR knowingly fails to maintain procedures that require its employees to conduct reasonable reinvestigations of account information upon receiving notice of a consumer's dispute.

57. Upon information and belief, NAR acted in accordance with its ordinary policies and procedures upon receiving notice of Plaintiff's disputes.

58. Upon information and belief, the CRA Defendants blindly adopted NAR's response as the truth without conducting any form of independent investigation.

59. Upon information and belief, the CRA Defendants failed to conduct a reasonable reinvestigation of Plaintiff's disputes.

60. Upon information and belief, the CRA Defendants failed to consider all relevant information while reinvestigating Plaintiff's disputes.

61. Instead, the CRA Defendants merely parroted the inaccurate information provided by NAR without reviewing all the relevant information available to them.

62. Consequently, the CRA Defendants continued to include the past due, unpaid Account in Plaintiff's consumer reports after receiving and "investigating" her disputes.

63. Upon information and belief, the CRA Defendants know or have reason to know that data furnishers like NAR regularly report inaccurate and/or incomplete information about consumer accounts.

64. Upon information and belief, the CRA Defendants continue to accept information from unreliable data furnishers because it allows them to compile and distribute credit reports (and comparable products) faster, with higher profit margins.

65. Upon information and belief, the CRA Defendants knowingly fail to employ procedures and/or policies that require their employees to conduct reasonable reinvestigation of consumer disputes.

66. Upon information and belief, the CRA Defendants knowingly maintain policies and procedures that do not require their employees to consider all relevant information when processing, investigating, and responding to consumer disputes.

67. Upon information and belief, the CRA Defendants have been sued by other consumers in the past who have alleged dispute procedures were unreasonable and violative of the FCRA.

68. Therefore, the CRA Defendants had actual notice of their deficient procedures.

69. Despite knowing that their procedures often result in inaccurate reporting, the CRA Defendants recklessly and knowingly fail to employ procedures to assure the information they compile, publish, and sell to third parties in consumer reports is maximally accurate.

70. As a direct result of the Defendants' failures to correct the inaccurate information, Plaintiff suffered actual harm in the form of decreased credit worthiness, a lower credit score, and a higher interest rate on her auto loan.

71. Plaintiff also suffered actual harm in the form of emotional distress, embarrassment, stress, anxiety and sleeplessness.

72. Defendants' failure to comply with their obligations under the FCRA has caused Plaintiff to revisit the trauma associated with the lease that underlies the alleged debt owed to NAR.

73. Plaintiff is extremely frustrated by the inaccurate reporting, as she worked diligently to remove herself from a dangerous domestic violence situation in a manner that would ensure she would not be held responsible for the lease.

<u><b>COUNT I</b></u><br><b>NAR's Violations of 15 U.S.C. § 1681s-2(b)</b>

74. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

75. At all times pertinent hereto, NAR was a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher of information" to the CRA Defendants.

76. As a data furnisher, NAR has a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a dispute directly from a consumer, see 15 U.S.C. § 1681s-2(a).

77. Upon receipt of a consumer dispute from a consumer reporting agency, furnishers like NAR are required to: conduct an investigation with respect to the disputed information; review all relevant information; report the results of the investigation to the consumer reporting agency; and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other consumer reporting agencies to which the furnisher has provided the inaccurate information.

78. Upon information and belief, NAR received notice of Plaintiff's disputes from Equifax, Experian, and Trans Union within the same week.

79. Despite receiving and allegedly "investigating" at least three separate disputes from Plaintiff, NAR failed to recognize that it had furnished inaccurate information about the Account to the CRA Defendants.

80. Each time NAR was notified of Plaintiff's disputes, it failed to reasonably investigate the Account and correct the inaccurate information.

81. Upon information and belief, NAR's actions in the instant matter are representative of its normal policies and procedures.

82. Upon information and belief, NAR's regular investigation procedures do not require a reasonable review of a tradeline that is disputed by a consumer.

83. Rather, NAR's regular procedures allow it to respond to disputes after conducting only a cursory review of the account at issue.

84. NAR's above-described conduct violated 15 U.S.C. § 1681s-2(b).

85. Specifically, NAR violated 15 U.S.C. § 1681s-2(b):

   i. By willfully and/or negligently failing to conduct an investigation of the disputed Account;

   ii. By willfully and/or negligently failing to review all relevant information concerning Plaintiff's Account;

   iii. By willfully and/or negligently failing to report the results of its investigation of the disputed Account to all credit reporting agencies;

    iv.    By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation of her disputes;

    v.    By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation of the disputed information;

    vi.    By willfully and/or negligently failing to permanently block the reporting of the inaccurate information and continuing to report and furnish inaccurate or incomplete information about Plaintiff's Account to credit reporting agencies; and

    vii.    By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

86.    As a direct result of NAR's conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: reduced credit worthiness, credit approval at less favorable rates, stress, anxiety, frustration, sleepless nights, humiliation, wasted time, unnecessary financial strain, and other damages that are continuing in nature.

87.    NAR's violations of the FCRA were both willful and knowing. Therefore, NAR is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

88.    Alternatively, NAR's violations of the FCRA were negligent. Therefore, NAR is individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

89.    In any event, NAR is individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### The CRA Defendants' Violations of 15 U.S.C. § 1681e(b)

90. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

91. The FCRA requires consumer reporting agencies, like Equifax, Experian, and Trans Union to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximal accuracy. 15 U.S.C. § 1681e(b).

92. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation and maintenance of Plaintiff's consumer reports and/or credit files.

93. Specifically, the CRA Defendants failed to maintain procedures that ensured they did not inaccurately report the Account after Plaintiff informed them that she was not responsible for the underlying debt.

94. It is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, especially when the information provided by a furnisher conflict with information the consumer reporting agency has within its possession and control.

95. It is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, when it directly conflicts with the documentation a consumer provides alongside her dispute(s).

96. As a result of the CRA Defendants' conduct, action, and inaction Plaintiff has suffered actual damages, including but not limited to: reduced credit worthiness, credit approval at less favorable rates, stress, anxiety, frustration, sleepless nights, humiliation, wasted time, financial strain, and other damages continuing in nature.

97. The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were both willful and knowing. Therefore, the CRA Defendants are individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

98. Alternatively, The CRA violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, the CRA Defendants individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

99. In any event, Equifax, Experian, and Trans Union are both individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT III
### The CRA Defendants' Violations of 15 U.S.C. § 1681i

100. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

101. Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their consumer file is inaccurate or incomplete, the consumer reporting agency is required to conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

102. Each of the CRA Defendants' received Plaintiff's disputes of the Account in or around March 2022, as detailed herein.

103. Thereafter, all three of the CRA Defendants' continued to include the Account in Plaintiff's consumer reports, which was patently inaccurate, as Plaintiff was never responsible for the underlying debt.

104. The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the information it reported about Plaintiff and the Account was accurate.

105. The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to correct or delete the inaccurate information reported on Plaintiff's consumer reports that indicated the Account belonged to her, was past due, and had an outstanding balance.

106. Upon information and belief, Equifax, Experian, and Trans Union violated the FCRA by failing to provide NAR with all the relevant information regarding Plaintiff, his dispute, and the Account. 15 U.S.C. § 1681i(a)(2)(A).

107. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer files upon reinvestigation of Plaintiff's disputes.

108. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

109. As a result of The CRA Defendants' violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

110. The CRA Defendants' violations of 15 U.S.C. § 1681i were willful and knowing. Therefore, the CRA Defendants are individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

111. Alternatively, the CRA Defendants' violations of the FCRA were negligent. Therefore, the CRA Defendants are individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

112. In any event, the CRA Defendants are individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

113. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Alyssa Harris, respectfully requests judgment be entered against Defendants for the following:

a) Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

b) Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

c) Punitive damages pursuant to 15 U.S.C. § 1681n;

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

e) Any pre-judgment and post-judgment interest as may be allowed under the law; and

f) Other and further relief as the Court may deem just and proper.

Dated: August 1, 2022,

/s/ Brett D. Cragun
Brett D. Cragun (#8683)
CRAGUN & CRAGUN
PO Box 160234
Clearfield, UT 84016
T: (801) 513-2060
F: (801) 513-2082
E: Brett@BrettCragun.com

*Attorney for Plaintiff*
Alyssa Harris